## Statement of Facts in Support of Complaint/Arrest Warrant

1. I, Robinson N. Blake, am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed in that capacity since March of 2009. I am currently assigned to the Richmond Division of the FBI, Charlottesville Resident Agency. As a Special Agent of the FBI, I am currently assigned to investigations of criminal matters and national security matters. The information set forth in this affidavit has been derived from my own investigation, including my interviews of Jodi Homaune. I have not included each and every fact known to me concerning the investigation. Rather, I have set forth only those facts necessary to establish probable cause.

2. As a federal agent, I am authorized to investigate violations of United States laws, and to execute warrants issued under the authority of the United States.

3. I am investigating the alleged international parental kidnaping of a minor female (herein referred to as "MH") by her father, Kevin Hussain Homaune (Homaune), on or about May 30, 2009. As will be shown below, there is probable cause to believe that Homaune has retained MH outside of the United States with intent to obstruct the lawful exercise of parental rights of MH's mother, Jodi Homaune nee Reed (Jodi), in violation of Title 18, United States Code (U.S.C.), § 1204.

4. Jodi and Homaune were married on May 6, 2002, in Chattanooga, Tennessee. Prior to this marriage, Homaune lived in Canada (they met on-line). One child, MH Batool Homaune, year of birth 2002, was born to Jodi and Homaune during their marriage. Upon getting married, Jodi and Homaune moved to Sarnia, Canada. Jodi and Homaune last physically cohabited in Sarnia, Canada. The couple ceased to co-habitate in approximately February of 2003, and Jodi moved back to the United States. Following this separation, Homaune visited Jodi in the United States, but did not set up residency in the U.S.

5. In February of 2003, Homaune helped Jodi move to Hale, Michigan, and then to

Burlington, Iowa. Jodi believes Homaune then went to Europe for approximately two and-a-half months, and then returned to live in Canada. From the time MH was born she has resided with Jodi. Jodi stated to your affiant that it was always understood between Homaune and Jodi that MH would live with Jodi, however, there were no formal legal arrangements for MH's custody or visitation at that time.

6. Jodi and MH moved to Charlottesville, Virginia, from Burlington, Iowa, in 2007. In August 2010, Jodi moved to a second location in Central Virginia, wear she resides as of the date of this statement of facts.

7. Jodi stated to your affiant that Homaune typically visited with MH every 4 to 6 weeks for most of MH's life, although at times Homaune would not see MH for 4 to 6 months at a time. In order to enter the United States to visit with MH, Homaune required a Permanent Resident Card. Jodi became Homaune's Citizenship and Immigration Services (CIS)(formerly Immigration and Naturalization Service) sponsor so that he could obtain the Permanent Resident Card.

8. Jodi stated to your affiant that, in recent years, Homaune would take MH on a weekend or week long vacation without Jodi. For the 2008 Christmas vacation Homaune took MH to Florida for a week. For the 2009 Easter weekend Homaune took MH to Fredericksburg, Virginia. After all these visits, Homaune returned MH to Jodi at the time Homaune and Jodi had agreed.

9. According to Jodi, Homaune told Jodi in early 2009 that he wished to take MH to Iran during MH's 2009 summer vacation to meet Homaune's family. Homaune proposed taking MH to Iran for the entire summer, but Jodi told Homaune that the entire summer would be too long for MH to be away. Homaune and Jodi agreed that Homaune would take MH to Iran from May 29, 2009, to July 9, 2009.

10. According to a Pers Voyage Travel Itinerary (Itinerary/Invoice No. 0014149) provided

to me by Jodi, Homaune and MH departed Washington Dulles Airport on May 29, 2009, via KLM Royal Dutch Airlines flight 652. Homaune and MH stopped in Amsterdam, Netherlands, then proceeded to Tehran, Iran via KLM Royal Dutch Airlines flight 433, which arrived in Tehran on May 30, 2009. According to this same itinerary, Homaune and MH were scheduled to return to the United States on July 9, 2009.

11. Jodi stated to your affiant that, on or about May 30, 2009, Homaune called Jodi and told her that Iran's new laws required Iranian visas which Homaune and MH did not have; that both Homaune's and MH's passports had been taken by Iranian officials upon their arrival, and that the passports would not be returned until Homaune provided documents required for the issuance of Iranian visas. Homaune told Jodi that he needed MH's birth certificate to be translated into Farsi.

12. In response to Homaune's request, Jodi went to Washington, DC, on two separate occasions to obtain MH's birth certificate, to arrange for the translation of the birth certificate into Farsi, and to obtain other necessary papers such as those which proved Homaune's paternity.

13. Jodi stated to your affiant it took the month of June and most of July, 2009, for Jodi to acquire the necessary paperwork. After Jodi sent the papers to Homaune, several weeks passed during which time Homaune claimed he had not received the papers. Jodi advised me she had mailed correspondence to Homaune's family in Iran before and there had never been any problems with the receipt of the correspondence.

14. Jodi stated to your affiant that, on or about July 9, 2009, in a telephone conversation, Homaune indicated to Jodi that he could not return MH on the initially planned return date of July 9, 2009 due to the delay of the papers. Homaune did, however, ask Jodi the date of MH's first day of school and stated that he would have MH back before that date.

15. Jodi stated to your affiant that MH began to be curious and questioned Jodi as to the

reason for her continued stay in Iran.

16. Jodi stated to your affiant that, in early August, 2009, Homaune's statements to Jodi on the phone began to change. Homaune no longer talked about making the trip with MH back to Virginia; he began asking Jodi for money and stated various reasons for his need for the money; he stated that he had been in trouble with the law for taking a picture; he also stated that he had been in a motorcycle accident and could not work.

17. Jodi stated to your affiant that, in early August, 2009, in a telephone conversation, Homaune began to tell Jodi that Iran was a better place for MH to live; that MH had family there; and that Jodi was not the best mother.

18. Jodi stated to your affiant that, beginning approximately August, 2009, Homaune told Jodi that he did not think she should talk to MH so much because Jodi's calls were upsetting MH.

19. Jodi stated to your affiant that, in early August, 2009, Homaune asked Jodi to send him all of MH's belongings. During one phone call in August, 2009, MH herself got on the phone with Jodi and asked Jodi to send her belongings. MH told Jodi that she liked it in Iran, however, Jodi could hear Homaune in the background saying to MH "Tell her you like it here; tell her you want to stay here" or words to that effect.

20. Jodi stated to your affiant that, by mid August, 2009, Homaune began telling Jodi that MH would be better off in Iran. Homaune also persisted in asking Jodi for money.

21. Jodi contacted the Charlottesville Police Department, who then referred her to Albemarle County Police Department. Jodi filed a missing persons report with Albemarle County Police Department. The report is dated September 28, 2009, and reflects incident number 2009-08916.

22. Jodi stated to your affiant that Homaune's position changed from conversation to conversation. On some occasions he told Jodi that he would bring MH back home, and, on others,

stated that he would never bring her back.

23.   Jodi stated to your affiant that, in September, 2009, during a telephone conversation, Homaune admitted to Jodi that he had arranged to have all of his belongings in Canada shipped to Iran.

24.   Jodi stated to your affiant that in September, October, and November, 2009, Homaune continued to request that Jodi send him money, telling Jodi that if she sent him money he would allow her to talk to MH, if she did not, he would not allow Jodi to talk MH.

25.   Jodi stated to your affiant that, on one occasion, in October, 2009, Jodi called the residence of Homaune's parents and was able to talk to MH at a time when Homaune was not at home.  MH stated to Jodi, "I don't know why I am still here.  I miss you, I miss my home, I miss my friends, I miss my things."  Jodi reassured MH that she was doing all she could so that they could see one another again and reiterated her love for MH.  After that brief conversation, MH then stated, "I'm not supposed to be talking to you without Baba (Farsi for "dad") here," and hung up.

26. Jodi stated to your affiant that, in mid January, 2010, on one occasion when Jodi asked to talk to MH on the phone, MH said to Jodi, "I can't remember what you look like, Mommy."  Jodi then asked MH, "Don't you have any pictures of your mommy?"  (Jodi had given MH some index cards with notes on them for MH to read while she was in Iran. The notes had photographs of Jodi and MH attached to them).  MH said, "No, I don't have any pictures."  At that moment it appeared that Homaune abruptly snatched the phone from MH.  Homaune told Jodi that this was not true, that he had shown MH pictures of Jodi on his computer and that he had her practicing English for her return home.  Homaune appeared very agitated that MH had said that.

27.   Jodi stated to your affiant that, prior to March 5, 2010, Jodi called Homaune's parents' home and one of Homaune's sisters who is fluent in English, answered the phone and asked Jodi if

she could come and get MH and take MH home, stating that MH wanted to go home and missed Jodi. Jodi explained to the sister that she was trying but would not be able to acquire a visa to get into Iran, or words to that effect. The sister also asked Jodi about her illness, then suddenly told Jodi, "I have to go now" and hung up the phone.

28. On September 23, 2009, Jodi faxed a Welfare and Whereabouts Request Form to the U.S. Department of State. According to the U.S. Department of State website (http://travel.state.gov/travel/tips/emergencies/emergencies_1202.html), welfare/whereabouts checks can be used to help locate U.S. citizens overseas when relatives or friends are concerned about their welfare or need to notify them of emergencies at home.

29. On March 3, 2010, a welfare/whereabouts check was performed on MH by the Swiss Embassy in Tehran, Iran, on behalf of the U.S. Department of State. It is noted in the report of this welfare/whereabouts check that MH indicated that she was attending first grade in Iran.

30. Jodi stated to your affiant that, on March 13, 2010, Jodi called Homaune's parents' home in an attempt to reach MH and Homaune answered the phone. Homaune told Jodi he would not allow her to talk to MH. Homaune appeared agitated over the fact that the State Department was now involved (in regards to the welfare/whereabouts check). Homaune told Jodi to forget about MH and that he was going to sell MH on the black market. Jodi asked Homaune how he could say this about his own daughter and what happened to him to make him say those things. Homaune then hung up the phone.

31. On March 18, 2010, a custody order was entered in the Circuit Court for the County of Albemarle, Virginia, ordering legal and physical custody of MH until further order of the Court; and that Jodi shall be the only parent authorized to apply for, or obtain, MH's passport; that Jodi shall be the only parent authorized to remove MH from the United States; that Homaune shall have no

visitation with MH pending further hearing in this matter; and that Homaune shall return MH to Jodi on April 5, 2010, at 8:30 a.m., to Circuit Court, located at 501 East Jefferson Street, Charlottesville, Virginia, 22902. (Though the complaint in this case is based on the theory that Homaune obstructed the lawful exercise of Jodi's parental rights arising by operation of law, this information is included to inform the Court of the efforts Jodi has made to secure the return of her child.)

32. On June 2, 2010, an order of divorce was entered into the Circuit Court for the County of Albemarle, Virginia, ordering that Jodi is absolutely divorced from Homaune on the ground of Homaune's constructive desertion followed by one year of separation without cohabitation and without interruption.

33. During a consensually monitored phone call on June 18, 2010, the following was captured on a recording device:

(a) Jodi asked Homaune, "why don't you let me bring her home?" Homaune responded to Jodi's question by asking "why should I send her to you?" Jodi then asked Homaune if he could ever come out of Iran, to which Homaune answered, "yeah, she can...but why?" Jodi then corrected Homaune, saying that she was referring to Homaune, and not MH. Homaune then answered, "For now, I am here." Jodi asked Homaune for how long he was in Iran, to which Homaune answered "for now I'm here, I don't know...but why should I send MH out?"

(b) Jodi asked Homaune if they could set up a way for Jodi and MH to talk once a week. Homaune responded by saying "No." Jodi then told Homaune that he did not realize what he was doing to MH, and this was the reason why the Swiss Embassy was involved, in reference to the welfare check. Homaune responded, saying "Listen, they have no authority in Iran. You think they can come and tell me to come to embassy, I can say fuck you, and they cannot do nothing. Fuck off. Don't think by getting the Swiss Embassy involved is going to help you."

(c)  Jodi told Homaune that she understood that he was in trouble in Iran, but could not understand why he was doing this to MH.  Homaune answered "Because you are not helping me."  Jodi then asked Homaune, if she helped him, would he then let her talk to MH?  Homaune responded by saying "If you help me, I will let you talk to her, yes."

(d)  Jodi asked Homaune if she could talk to MH.  Homaune responded, asking Jodi, "Are you going to promise me that you are not going to mess her head up?"  Jodi responded by saying that in all of their conversations, all Jodi has done is tell MH that she loves her.  Homaune responded, saying "Ok, if you're going to tell her you love her, what's she doing, stuff like that, how was your grade at school...Don't talk about I'm going to bring you back..."

34.  Jodi stated to your affiant that, on at least four occasions, Homaune said to Jodi, "You've had her for seven years, now I'm going to have her for seven years,"  including once back in June or July of 2009, and once during the March 13, 2010 phone conversation, during which he told Jodi that he was going to sell MH on the black market.

35.  Jodi stated to your affiant that on October 20, 2010, Jodi spoke to Homaune via telephone.  During that conversation, Homaune stated that he remained in Iran.  Homaune has not as of the date of this affidavit returned MH to the United States.

36.  Several months ago, Homaune informed Jodi that he was no longer living with his family in Tehran, Iran and had moved to Mashad (ph?), Iran.   Homaune did not provide any more detail about where he was living.

37.  This Court has jurisdiction over the offense under investigation pursuant to 18 U.S.C. § 3238, which provides, in relevant part, that jurisdiction for "[t]he trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought; but if such offender . . . [is] not so arrested or

brought into any district, an indictment or information may be filed in the district of the last known residence of the offender . . . , or if no such residence is known the indictment or information may be filed in the District of Columbia." In this case, the defendant's precise last known residence is unknown, but is believed to be somewhere in Mashad, Iran. Homaune has no prior permanent residence in the United States.

<u>CONCLUSION</u>

Based on the information set forth in this affidavit, I submit that there is probable cause to believe:

(a) Homaune retained MH outside of the United States with intent to obstruct the lawful exercise of parental rights of MH's mother, Jodi Homaune nee Reed.

All in violation of Title 18, United States Code (U.S.C.), § 1204.

_____
Robinson N. Blake
Special Agent
Federal Bureau of Investigation
Charlottesville, Virginia

Subscribed and sworn to before me this_____day of_____, _____.

_____

U.S. Magistrate Judge