UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN 2 3 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KEVIN HUSSAIN HOMAUNE,**<br><br>Defendant. | Criminal Action No. 12-150 (JEB) |

## MEMORANDUM OPINION & RESTITUTION ORDER

Defendant Kevin Homaune pled guilty to and has been sentenced for attempted international parental kidnapping. The Government now seeks restitution for the child's mother, Jodi Reed, who left a well-paying job and shelled out hefty legal fees in her two-year quest to recover her daughter from Defendant in Iran. The Court will award most of the requested restitution.

### I.      Background

A previous opinion lays out the facts of this case. See United States v. Homaune, Crim. No. 12-150, 2012 WL 4858987 (D.D.C. Oct. 15, 2012). In brief, Homaune and Reed, who were estranged but not divorced, agreed that he would take their daughter M.H. to Iran for six weeks in the summer of 2009, then bring her back to Reed in the United States. At the end of six weeks, however, Homaune refused to return, ultimately living with M.H. in Iran for two more years. Mother and daughter finally reunited in Turkey in August 2011.

The Government charged Homaune with one count of international parental kidnapping. Soon after this Court denied Homaune's motions to dismiss, see id., he pled guilty on October 25, 2012, to one count of attempted international parental kidnapping under 18 U.S.C. § 1204. As contemplated by his plea under Federal Rule of Criminal Procedure 11(c)(1)(C), the Court

1

sentenced Homaune that same day to time served, which amounted to a bit over five months in custody from the time of his arrest in Germany and subsequent extradition. In the plea agreement, Homaune also agreed "to pay restitution to Jodi Reed in an amount to be determined by the Court" under 18 U.S.C. § 3663. See Plea Agreement Letter at 5. During the plea hearing, Homaune agreed to separate his sentencing hearing from his restitution hearing and waived his right to be present at the latter in order to expedite his removal to Canada and release from incarceration. See 18 U.S.C. § 3664(d)(5) ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."). After accommodating the parties' requests for continuances, the Court held a restitution hearing on January 22, 2013, during which Reed testified via telephone.

## II. Analysis

Under 18 U.S.C. § 3663(a)(1)(A), a court "may order" that a defendant convicted under Title 18 "make restitution to any victim of [his] offense." A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663(a)(2). "[I]f agreed to by the parties in a plea agreement," the court may also order "restitution to persons other than the victim of the offense." 18 U.S.C. § 3663(a)(1)(A). In all cases, the restitution order may require the defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4). Under 18 U.S.C. § 3664(e), the court resolves disputes about restitution "by the preponderance of the evidence," assigning the Government the

burden of proving the victims' losses resulting from the offense and the defendant the burden of proving his financial resources and needs. "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The court must also order a payment schedule that considers the defendant's economic circumstances. See 18 U.S.C. § 3664(f)(2).

As Reed is a victim of the offense and as Homaune agreed in his plea agreement to pay her restitution, restitution to Reed is proper here. Defendant, furthermore, has not argued that he should be excused from restitution based on his financial circumstances. See 18 U.S.C. § 3663(a)(1)(B). The Government here seeks four categories of restitution for Reed: attorney fees for custody and divorce proceedings, lost wages, attorney fees for a Turkish lawyer, and miscellaneous expenses. The Court will consider each separately.

First, Reed paid a Virginia attorney for representation in a combined custody and divorce proceeding while M.H. was in Iran. In another International Parental Kidnapping Crime Act case, the Ninth Circuit upheld restitution for attorney fees paid by a parent seeking custody. See United States v. Cummings, 281 F.3d 1046, 1052 (9th Cir. 2002) ("[The mother's] attorney's fees, which were incurred in an attempt to regain custody of her children, were a direct and foreseeable result of Cummings's improper removal and retention of them. There would have been no need to engage in civil proceedings to recover the children if Cummings had not unlawfully taken them to Germany."). Homaune, in fact, allows that the expenses for the custodial order are proper under § 3663 and contests only the expenses incurred for the divorce. See Def. Reply at 1-2. While the custody and divorce costs are not separated on the attorney's invoice, see Gov't Mot., Exh. 1, the Government explains that "it was a joint proceeding and the

same complaint was used to support both the custody and divorce orders and, indeed, [Reed's] attorneys told her that she could not obtain full custody of M.H. in Virginia without first being divorced from the defendant." Gov't Mot. at 4. Homaune has pointed to nothing that would undermine this assertion that, in Virginia, custody and divorce are linked. As attorney fees for the combined proceeding were thus the direct and proximate result of Homaune's attempted international parental kidnapping, the Court will order the full restitution sought, $6698.63.

Second, Reed took lower-paying jobs while M.H. was missing. As Reed explained in her testimony at the restitution hearing, when Homaune took their daughter to Iran, she was working as a sales manager for six radio stations, supervising nine to twelve salespeople. When Reed learned in early July 2009 that Homaune and M.H. would not return, however, she asked the radio stations for a demotion to a regular salesperson who would work on commission. She convincingly testified that she had to leave her supervisory job because she needed more flexibility in her schedule so that she could meet with a long list of government agents (from the Iranian Embassy to the Department of State to local law enforcement to the FBI) in an effort to get her child back. She also spent time, for example, learning Farsi to aid her effort to recover her daughter. The Court credits Reed's reasonable explanation for leaving her job and finds that with the new demands on her time – directly and proximately caused by Homaune's offense – she would have been unable to satisfactorily discharge her job as a sales manager.

Reed lasted only six weeks as a salesperson for the radio stations before she was terminated for being unable to keep up with even that lesser job's responsibilities. After that, she worked for 12 weeks doing bathroom renovation for friends of a friend. Then, in 2010 and the majority of 2011, she bounced between salesperson jobs, always earning commission instead of a salary. She explained that her work in 2011 became especially sidetracked by Homaune's

repeated (and then repeatedly withdrawn) offers to let Reed see M.H. if she traveled to ever-changing foreign locations. After Homaune finally left such an offer in place, Reed reunited with M.H. in Turkey in August 2011. After August 2011, she left the workforce until November 2011, when she began a job that paid $250 per week for the rest of the year.

As evidence of her earnings in 2008, 2009, 2010, and 2011, the Government submits Reed's H&R Block income-tax summaries for those years. The Court agrees with Homaune that W-2s would have been preferable, but given Reed's testimony that these summaries are accurate and were in fact filed along with her tax returns, they are sufficient. The H&R Block summaries show Reed's earnings as follows: in 2008, $81,769; in 2009, $58,398; in 2010, $37,386; and in 2011, $14,074. See Gov't Mot., Exh. 3. Reed testified that those figures reflect all of her earnings from 2008 to 2011 except for her cash earnings from bathroom renovation, which she could not estimate. To be safe, the Court will estimate such cash earnings to be $10,000, although this is probably far higher than the actual sum.

All told, then, Reed was unable to work as a sales manager as a direct and proximate result of Homaune's offense from early July 2009 to early August 2011. As a sales manager, she had made $81,769 per year – $6814.08 per month – in 2008. Reed never testified that she would have earned a raise or promotion in 2009-2011, so the Court assumes that her 2008 salary would have continued unchanged. Taking that salary as the baseline, Reed would have earned $170,352.08 ($6814.08 per month × 25 months) as a sales manager during the period that Homaune had kidnapped M.H. Instead, Reed earned $27,513.50 ($58,398 reported in 2009 + $10,000 unreported cash – ($6814.08 × 6 months as radio manager)) in the second half of 2009; $37,386 in 2010; and $12,074 ($14,074 reported in 2011 – ($250 × 8 weeks in November and

December)) in 2011 before M.H. was recovered. So Reed earned $76,973.50 in those 25 months instead of $170,352.08, meaning she lost $93,378.58 in wages because of Homaune's offense.

In his brief, Homaune asserts that Reed actually left her job as a sales manager because of health problems. During the hearing, however, Reed explained that while she underwent chemotherapy from November 2008 to May 2009 – that is, before M.H. left – she worked normal hours during that period and then had only minor treatments while M.H. was gone. Reed further testified that her health never would have prevented her from working as a sales manager (as evidenced by the fact that she worked normal hours during her more serious chemotherapy) and that the sole impediments to her work in this period were her attempts to get M.H. back. The Court credits her testimony and will thus order $93,378.58 in restitution for lost wages.

Third, Reed incurred substantial legal expenses in Turkey, where she was finally reunited with her daughter. Homaune agrees that the restitution order should award Reed some amount, but questions the sum claimed. The Turkish lawyer's one-line invoice charges $18,000 (labeled an "advance payment") in addition to a $1300 retainer he already collected. See Gov't Mot., Exh. 4. Homaune argues that the fee requested and the one-line invoice are "completely unreasonable." Def. Reply at 5. Homaune has cited no case suggesting that § 3663 limits restitution to reasonable losses that directly and proximately result from a defendant's offense, and the Court sees no statutory hook for such a requirement. But, as explained below, the Court finds that the charges here were reasonable, so the question of whether a victim's losses must be reasonable can be left for another day.

In any event, the parties agreed during the hearing that this is a preeminent Turkish family-law lawyer. Reed testified that this lawyer worked on her case for two weeks (presumably beginning before Homaune arrived) and in the process was forced to cut his

international vacation short. As evidence of the lawyer's skill, Reed testified that this lawyer was able to get M.H. into Reed's legal custody and out of Turkey five days after M.H. arrived in the country with Homaune, even though in Turkey that process that can sometimes drag on for months. Crediting Reed's testimony, the Court finds the charges reasonable – prominent American lawyers would charge many times more for two weeks' work. Reed, indeed, testified that the lawyer initially charged her $145,000, and it is unclear whether the $18,000 invoice is a discount or simply a first installment on that larger sum. (The Government sought restitution only for the $18,000 invoice and the $1300 already paid.) The Court will order $19,300 in restitution for legal expenses in Turkey.

Finally, Reed incurred $130 in miscellaneous expenses – $25 for a copy of M.H.'s birth certificate and $105 for a passport issued to M.H. in Turkey. See Gov't Mot., Exhs. 6 & 7. Homaune agrees to pay $130 in restitution for these expenses. See Def. Reply at 5.

In total, that makes $119,507.21 in restitution. The parties have made no proposal as to how Homaune should pay this amount. Cf. 18 U.S.C. § 3664(f)(2) (court should determine schedule of payment according to defendant's current and projected financial circumstances). If unhappy with the schedule the Court imposes here, the parties may move to modify it, seeking first to reach a mutual agreement as to the proper schedule before filing a motion with the Court.

### III. Conclusion

For the reasons set forth above, the Court therefore ORDERS that:

1. Restitution in favor of Jodi Reed in the amount of $119,507.21 is imposed on Defendant Homaune;

2. Defendant Homaune shall pay such restitution at a rate of no less than $500 each month, beginning March 1, 2013, and continuing on the first day of each succeeding month until the $119,507.21 is fully paid;

3. Defendant Homaune shall make his monthly checks out to the Clerk of the Court for the U.S. District Court for the District of Columbia, shall include his case number on each check (*i.e.*, Crim. No. 12-150), and shall send the checks to the Clerk of the Court for the U.S. District Court for the District of Columbia, 333 Constitution Ave. NW, Washington, DC 20001;

4. Until the obligation is paid in full, Defendant Homaune shall notify the Clerk of the Court and the U.S. Attorney's Office for the District of Columbia of any change of address within 30 days of such change;

5. Defendant Homaune shall notify the Clerk of the Court and the U.S. Attorney's Office of any material change in his economic circumstances that might affect his ability to pay restitution;

6. All other terms and conditions previously set forth at the sentencing hearing shall remain the same; and

7. An Amended Order of Judgment shall be entered in this case, reflecting restitution in the amount of $119,507.21.

**SO ORDERED.**

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: January 23, 2013